STEPTOE & JOHNSON LLP
Seong Kim (SBN 166604)
Dylan Ruga (SBN 235969)
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067-5052
Telephone:  (310) 734-3200
Facsimile:(310) 734-3300
Email:    skim@steptoe.com
Email:    druga@steptoe.com

Attorneys for Specially-Appearing Defendant
Televisa, S.A. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OGM. Inc., a California corporation; GROUP PRO INC., a California corporation; GROUP PRO INC., a California corporation dba KRONBORG MUSIC ; GROUP PRO INC., a California corporation dba KRONBORG/ DOLLHOUSE PUBLISHING; GROUP PRO INC., a California corporation dba GLOBAL MUSIC VS; GROUP PRO INC., a California corporation dba DOLLHOUSE MUSIC; and OLE GEORG, an individual.<br><br>Plaintiffs,<br><br>vs.<br><br>TELEVISA, S.A. DE C.V., a Mexican corporation; XENON PICTURES, INC. a California corporation; LIONS GATE ENTERTAINMENT INC., a Delaware corporation; TELEVISA INTERNA-TIONAL MARKETING GROUP, INC., a California corporation; UNIVISION COMMUNICATIONS, INC., a Delaware corporation; GALAVISION, INC., a Delaware corporation; and UNIVISION TELEVISION GROUP, INC., a Delaware corporation and DOES 1-100, inclusive,<br><br>Defendants. | Case No.:  CV08-05742 JFW (JCx)<br><br>**SPECIALLY-APPEARING DEFENDANT TELEVISA, S.A. DE C.V.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FRCP 12(b)(5) FOR DEFICIENT SERVICE OF PROCESS**<br><br>[Declaration of Dylan Ruga filed, and [PROPOSED] Order lodged herewith]<br><br>DATE:      April 20, 2009<br>TIME:      1:30 p.m.<br>PLACE:    Courtroom 16 |

1

1 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **Please take notice** that on April 20, 2009, at 1:30 p.m., or as soon thereafter

3 as this motion may be heard, at the United States District Court for the Central

4 District of California, located at 312 N. Spring Street, Courtroom 16, Los Angeles,

5 California 90012, specially-appearing defendant Televisa, S.A. de C.V.

6 ("Televisa") will, and hereby does, move this Court for an order dismissing the

7 Complaint under FRCP 12(b)(5) for deficient service of process.

8      This motion is being made pursuant to Rule 12(b)(5) of the Federal Rules of

9 Civil Procedure on the grounds that Plaintiff's purported service on Televisa, a

10 foreign corporation, was invalid under Rule 4(h) of the Federal Rules of Civil

11 Procedure and the Hague Convention.

12      Certification:  Pursuant to Local Rule 7-3, Televisa's counsel met and

13 conferred with Plaintiff's counsel on March 3, 2009 regarding the substance of the

14 instant motion.  The parties, however, were unable to resolve their differences.

15      This motion is based upon this Notice of Motion and Motion, the

16 Declaration of Dylan Ruga filed herewith, the Appendix of Non-California

17 Authorities filed herewith, the pleadings on file in this action, and upon such other

18 evidence and argument as may be presented prior to or at the time of the hearing

19 on this matter.

20

21 Dated:  March 16, 2009            STEPTOE & JOHNSON LLP

22                            Seong Kim

                           Dylan Ruga

23

24                            By:_____ /S/_____

25                                DYLAN RUGA

                           Attorneys for Specially-Appearing

26                            Defendant

27                            Televisa, S.A. de C.V.

28

1

TABLE OF CONTENTS

2   I.      INTRODUCTION ........................................................................... 1

3   II.     FACTUAL BACKGROUND........................................................... 1

4           A.     Background Facts Relating to the Complaint....................... 1

5           B.     Plaintiffs' First Deficient Attempt at Service....................... 3

6           C.     Plaintiffs' Second and Last Deficient Attempt at Service.... 3

7   III.    LEGAL STANDARDS ................................................................... 4

8           A.     Legal Standard Under FRCP 12(b)(5) Motions to Quash

9                  Purported Service of Process................................................ 4

10          B.     Legal Standard Under FRCP 41.1 Applicable to Interpreting

11                 Foreign Law......................................................................... 4

12  IV.     DISCUSSION ................................................................................. 5

13          A.     Compliance with the Hague Convention is Mandatory ....... 5

14          B.     Methods of Service Allowed Under the Hague Convention.... 6

15          C.     Mexico Objected to All Alternative Methods of Service

16                 Under Article 10 of the Hague Convention; Thus, the Only

17                 Method Allowed is Through Mexico's Central Authority .... 7

18          D.     The Confusion in Other Districts Caused by the Unofficial

19                 "Courtesy" English Translation of Mexico's Objection

20                 Proffered by the Netherlands............................................... 8

21          E.     The Erroneous "Courtesy" English Translation Has

22                 Confused Even The State Department and Various State

23                 Courts Relying Upon the State Department Website, a Fate

24                 Which Should Not Be Repeated Here ................................. 11

25          F.     The Proper Interpretation of Mexico's Declarations is an

26                 Open Issue in This Circuit; This Court is Not Bound and

27                 Should Not Repeat the Mistakes of Other State Courts..... 15

28  V.      CONCLUSION............................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alyssa F. v. Christina R.*,
112 Cal. App. 4th 846 (2003) ........................................................................12, 14

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) .......................................................................3, 4, 6

*Casa de Cambio Delgado, Inc. v. Casa de Cambio Puebla, S.A. de C.V.*,
196 Misc. 2d 1 (N.Y. Supr. Ct. 2003)......................................................12, 13, 14

*Jinro America Inc. v. Secure Investments, Inc.*,
266 F.3d 993 (9th Cir. 2001) ................................................................................4

*NSM Music, Inc. v. Alvarez*,
2003 WL 685338 (N.D. Ill., Feb. 25, 2003) ......................................................12

*Omni Capital Int'l, Ltd. v. Wolff & Co.*,
484 U.S. 97 (1987)........................................................................................4, 15

*Sanchez-Llamas v. Oregon*,
548 U.S. 331 (2006)...........................................................................................15

*Todok v. Union State Bank of Harvard, Neb.*,
281 U.S. 449 (1930)...........................................................................................15

*Universal Trading & Inv. Co. v. Kiritchenko*,
2007 WL 660083 (N.D. Cal., Feb. 28, 2007) .......................................................6

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)........................................................................................6, 7

*Wood v. Wood*,
231 A.D.2d 713 (N.Y. Supr. Ct. 1996)...............................................................13

**RULES**

Fed. R. Civ. P. 4(h)(2).............................................................................................5

Fed. R. Civ. P. 12(b)(5)...........................................................................................4

Fed. R. Civ. P. 41.1..................................................................................................4

1

Fed. R. Civ. P. 4(f).........................................................................................................5

2

Fed. R. Civ. P.4(f)(1) ...................................................................................................5

3

Fed. R. Civ. P.4(f)(2) and (3)........................................................................................5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs claim to have served defendant Televisa, S.A. de C.V., a Mexican corporation, with the Summons and Complaint through the Hague Convention by registered mail and by personal service via a private process server. Even ignoring the problems with the claimed methods of service (including the fact that the person allegedly served does not work for Televisa), these purported methods of service are invalid under the Hague Convention.

When Mexico signed the Hague Convention in 1999, it exercised its right to object to service on its residents via registered mail or personal service.[1] Thus, the **only method** of serving Mexican residents is by transmitting the relevant documents to the Mexican Central Authority,[2] which is required to complete the service.

Because Plaintiffs failed to comply with the Hague Convention and Mexico's mandate that service be effected only through its Central Authority, the purported service on Televisa was invalid and must be quashed.

## II.   FACTUAL BACKGROUND

### A.   Background Facts Relating to the Complaint

Televisa, S.A. de C.V. ("Televisa") is a Mexican corporation, with no offices in this country. (Ruga Decl., ¶ 2.)

---

[1] Mexico is not alone in this regard; at least 25 countries have objected to service via registered mail and/or personal service. *See* Ruga Decl., ¶ 11, Ex. G at pp. 107-11.

[2] The "Central Authority" is an agency specifically established by each country that has joined the Hague Convention for the purpose of receiving requests for international service of process and to effectuate the service on its residents. In Mexico, the Central Authority is the Ministry of Foreign Affairs. *See* www.sre.gob.mx/english/. In the United States, the Department of Justice in Washington, D.C. is the Central Authority. (Ruga Decl., ¶ 11, Ex. G at p. 106.)

1    The Complaint in this action was filed on September 3, 2008 by OGM, Inc.

2    and others (collectively, "Plaintiffs") against Televisa and others for alleged

3    copyright infringement and breach of contract.  Plaintiffs claim that Televisa

4    infringed upon their copyrights by producing, licensing, broadcasting and

5    distributing television programs containing Plaintiffs' "production music" (*i.e.*,

6    incidental sound effects and clips used as background in most television

7    programs).  (Compl., ¶ 18.)

8    Plaintiffs admit, however, that they licensed these same rights to Televisa by

9    written agreement in 2002.  (Compl., ¶ 25) ("On or about November 1, 2002 OGM

10   entered into an Annual Blanket License Agreement with Defendant [Televisa]

11   whereby OGM authorized [Televisa] to embody the Compositions and the

12   Recordings in television programs for non-theatrical distribution only.").  Plaintiffs

13   contend that Televisa breached the license agreement by allegedly failing to

14   provide accurate cue-sheets (reports summarizing the use of the production music

15   in programs) and thus Televisa's use constituted copyright infringement,

16   notwithstanding the written Annual Blanket License Agreement.  (Compl., ¶¶ 26-

17   28.)  Further, Plaintiffs allege that Televisa did not have the right to distribute

18   programs containing Plaintiffs' production music by DVDs, VHS or other home

19   video devices.  (Compl., ¶ 16.)

20   Defendants disagree.  The first license between the parties dates back to at

21   least 1990 and Plaintiffs continued to honor the license agreement for over a

22   decade after Plaintiffs learned of the allegedly insufficient cue sheets.

23   Additionally, Defendants contend that Plaintiffs are barred from maintaining their

24   current claims by the statute of limitations, laches, equitable estoppel,

25   acquiescence, and other related defenses for the same reason.  Defendants further

26   contend that they have the right to distribute programs containing Plaintiffs'

27   production music by DVDs, VHS or other home video devices because Plaintiffs

28   clearly licensed to Televisa "all *non-theatrical* rights . . . excluding internet" for

2

1    Plaintiffs' production music, which by definition includes home video. Finally,

2    Defendants believe that Plaintiffs may not be the actual owners of the production

3    music at issue in this litigation.

4            **B.    Plaintiffs' First Deficient Attempt at Service**

5            On November 20, 2008, Plaintiffs' counsel allegedly mailed a copy of the

6    Summons and Complaint to Miguel Gutierrez Cervantez via registered mail, return

7    receipt requested. (Decl. of Gerald B. Weiner, Docket No. 27 at p. 45.)  However,

8    as explained below, the Hague Convention, as agreed to by Mexico, does *not* allow

9    for service of process by mail. *See infra* at § IV(C).

10           Moreover, Plaintiffs' declaration is deficient for other reasons.  Plaintiffs'

11   counsel declared that he is "informed and believe[s] . . . that Miguel Gutierrez

12   Cervantes is [Televisa's] representative."  (Decl. of Gerald B. Weiner, Docket No.

13   27 at p. 45.)  Plaintiffs' counsel, however, is misinformed because Miguel

14   Gutierrez Cervantes has not been employed by Televisa since early 2008.  (Ruga

15   Decl., ¶ 3.)  It is clear that the documents were not delivered to Mr. Cervantes

16   because the return receipt allegedly received by Plaintiffs' counsel in January 2009

17   reflects that the Summons and Complaint were received by a person named

18   Armando Verdusco on December 15, 2008.  (Decl. of Gerald B. Weiner, Docket

19   No. 27 at p. 45.)  Plaintiff's counsel has not declared who Mr. Verdusco is or why

20   he is allegedly authorized to accept service on behalf of Televisa or, for that

21   matter, receive mail on behalf of Mr. Gutierrez Cervantes.  Plaintiff bears the

22   burden of proving this. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

23           **C.    Plaintiffs' Second and Last Deficient Attempt at Service**

24           On January 30, 2009, Arturo Sobrino Franco, a private Mexican notary,

25   allegedly delivered the Summons and Complaint to two unknown persons in the

26   "correspondence" area of Televisa.  (Decl. of Arturo Sobrino Franco, Docket No.

27   26 at p. 3.)  As explained below, the Hague Convention, as agreed to by Mexico,

28

                                         3

1    does *not* allow for service of process by personal service by private unauthorized
2    individuals outside the Central Authority. *See infra* at § IV(D).

3         Moreover, this declaration also is deficient on its face. Plaintiff fails to
4    describe what the "correspondence" area of Televisa is or why anyone in that
5    department allegedly is authorized to accept service on behalf of Televisa.
6    Televisa does not know to what area Plaintiffs are referring. As a matter of law,
7    Plaintiffs have the burden of establishing that it has properly effected service.
8    *Brockmeyer*, 383 F.3d at 801. Plaintiffs have failed to satisfy this burden.

9         On February 23, 2009, Plaintiffs filed a Proof of Service that describes the
10   foregoing transactions and purports to demonstrate that Televisa has been served
11   with the Summons and Complaint. For reasons set forth below, however, the
12   purported service was invalid and must be quashed.

13   **III.   LEGAL STANDARDS**

14        **A.    Legal Standard Under FRCP 12(b)(5) Applicable to Motions to**
15             **Quash Purported Service of Process**

16        A court may not exercise personal jurisdiction over a defendant without
17   **proper** service of process. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97,
18   104 (1987). Once service of process has been challenged by a motion to dismiss
19   under Rule 12(b)(5) of the Federal Rules of Civil Procedure, **plaintiff bears the**
20   **burden** of proving that service was valid. *Brockmeyer,* 383 F.3d at 801.

21        **B.    Legal Standard Under FRCP 41.1 Applicable to Interpreting**
22             **Foreign Law**

23        Rule 41.1 of the Federal Rules of Civil Procedure applies when, as in the
24   instant case, the Court must interpret foreign law. As the Ninth Circuit has
25   explained, the Rule is designed to give the Court "wide latitude" in determining
26   issues of foreign law. *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d
27   993, 1000 (9th Cir. 2001).

28

4

1      Among other things, the Court is free to conduct its own research and may

2 consider any relevant evidence, whether or not such evidence is admissible under

3 the Federal Rules of Evidence.  Fed. R. Civ. P. 41.1 ("In determining foreign law,

4 the court may consider any relevant material or source, including testimony,

5 whether or not submitted by a party or admissible under the Federal Rules of

6 Evidence.") & 1966 advis. commit. note ("In further recognition of the peculiar

7 nature of the issue of foreign law, [Rule 41.1] provides that in determining this law

8 the court is not limited by material presented by the parties; it may engage in its

9 own research and consider any relevant material thus found.").

10 **IV.   DISCUSSION**

11      **A.   Compliance with the Hague Convention is Mandatory**

12      Rule 4(h)(2) of the Federal Rules of Civil Procedure applies to service on

13 foreign corporations.  Fed. R. Civ. P. 4(h)(2).  The Rule states that a foreign

14 corporation may be served in a manner described in Rule 4(f) for service on an

15 individual in a foreign country.  *Id.*

16      Rule 4(f)(1) makes clear that a party in a foreign country only can be served

17 by an "internationally agreed means of service."  While Rule 4(f)(2) and (3) go

18 onto describe other methods of service, they also make clear that those other

19 methods are *not* available if they are prohibited by an international agreement for

20 service of process. [3]

21

---

22 [3] (f) Serving an Individual in a Foreign Country.

23     Unless federal law provides otherwise, an individual - other than a minor, an
     incompetent person, or a person whose waiver has been filed - may be

24      served at a place not within any judicial district of the United States:

25     (1) *by any internationally agreed means of service* that is reasonably
     calculated to give notice, such as those authorized by the Hague Convention
     on the Service Abroad of Judicial and Extrajudicial Documents;

26     (2) *if there is* no internationally agreed means, or if an international agreement
     allows but does not specify other means, by a method that is reasonably calculated

27      to give notice . . . .

28     (3) by other means *not prohibited by international agreement*, as the court orders.

Fed. R. Civ. P. 4(f) (emphasis added)

1    In this case, there is an "internationally agreed means" of service between

2   United States and Mexico, namely the Convention on the Service Abroad of

3   Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague

4   Convention").  Thus, because United States and Mexico both are signatories, the

5   Hague Convention provides the *exclusive means* by which Plaintiffs can serve

6   Televisa in Mexico.  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694,

7   705 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which

8   it applies."); *Brockmeyer*, 383 F.3d at 801; *Universal Trading & Inv. Co. v.*

9   *Kiritchenko*, 2007 WL 660083 at *2 (N.D. Cal., Feb. 28, 2007) ("Here, the United

10   States, the British Virgin Islands, and Antigua are signatories to the Hague

11   Convention.  Accordingly, because service of process was attempted abroad, the

12   validity of that service is controlled by the Hague Convention.") (internal citations

13   and punctuation omitted).

14    It follows that the purported service of process on Televisa must be quashed

15   if Plaintiff did not comply with the procedures set forth in the Hague Convention.[4]

16    **B.    Methods of Service Allowed Under the Hague Convention**

17    When Mexico signed the Hague Convention, Mexico exercised its right to

18   object to all methods of serving its citizens except for one – service through

19   Mexico's Central Authority.[5]  Mexico is not alone in this regard; at least 25

20

21   _____

22   [4] Plaintiffs' counsel agrees.  During the parties' meet and confer conference, Plaintiffs' counsel,

23   Henry Self, confirmed that the service on Televisa is valid only if it was accomplished pursuant

     to the Hague Convention.  (Ruga Decl., ¶ 4.)

24

25   [5] There are two primary methods of service under the Hague Convention:  (1) service

26   through a country's Central Authority, and (2) "alternative methods," which include service by

     mail or personal delivery.  As explained below, countries must allow service through their

27   Central Authority, but may object to service by alternative methods.

28

1    countries similarly have objected to alternative methods of service under the Hague
2    Convention.  (Ruga Decl., ¶ 11, Ex. G at pp. 107-11.)

3           Articles 2-6 of the Hague Convention set forth the procedure for service of
4    process through a country's central authority.  As the United States Supreme Court
5    explained, each signing country is required to establish a central authority to
6    receive requests for service of documents from other countries (which, in Mexico's
7    case, is its Ministry of Foreign Affairs).  *Schlunk*, 486 U.S. at 698.  According to
8    Articles 2-6 of the Convention, once a central authority receives a request for
9    service in the proper form, it must serve the documents by a method prescribed by
10   the internal law of the receiving country or by a method designated by the
11   requester that is compatible with that country's laws.  *Id*. at 699.  The central
12   authority must then provide a certificate of service that conforms to a model
13   established by the Hague Convention.  *Id*.

14          In addition to the mandatory method of service through the central authority,
15   Articles 10(a)-(c) of the Hague Convention give each signing country the *option* to
16   permit (or to object) to other methods of service.  Specifically, these Articles state
17   that, **unless a contracting state objects**, service of foreign documents also may be
18   effected by mail or by personal service.  (Ruga Decl., ¶ 5, Ex. A at pp. 7-8.)
19   Again, unlike the method for service through the central authority, signing
20   countries are *not* required to permit service of process through these alternative
21   means.

22          **C.      Mexico Objected to All Alternative Methods of Service Under**
23                   **Article 10 of the Hague Convention; Thus, the Only Method**
24                   **Allowed is Through Mexico's Central Authority**

25          When Mexico acceded to the Hague Convention in 1999, it filed with the
26   Ministry of Foreign Affairs of the Netherlands declarations in Spanish that
27   specifically and unequivocally objected to all alternative methods of service under
28   Articles 10(a)-(c), so that *use of the Mexican Central Authority is mandatory in all*

1    *cases involving international service on Mexican residents.* (Ruga Decl., ¶ 6, Ex.

2    B at p. 26 (official Mexican declarations submitted to the Ministry of Foreign

3    Affairs of the Netherlands on November 2, 1999) & Ex. C, p. 41 (certified English

4    translation of official Mexican declarations) & Ex. F, pp. 85-86 (Charles B.

5    Campbell, *No Sirve:* The Invalidity of Service of Process Abroad by Mail or

6    Private Process Server on Parties in Mexico Under the Hague Service Convention

7    [hereinafter "Campbell"], available for download at: http://ssrn.com/abstract=

8    1347003 (last visited March 3, 2009)).

9       The United States Department of State's (the "State Department") Foreign

10    Affairs Manual (FAM) confirms that Mexico lodged objections to Article 10(a) of

11    the Convention and, therefore, **service of process in Mexico by registered mail is**

12    **prohibited.** (Ruga Decl., ¶ 11, Ex. G at pp. 103-04 & 106-11 (7 FAM 951,

13    *available at* http://www.state.gov/documents/organization/ 86743.pdf (last visited

14    March 10, 2009)).

15       **D.**    **The Confusion in Other Districts Caused by the Unofficial**

16          **"Courtesy" English Translation of Mexico's Objection Proffered**

17          **by the Netherlands**

18       When Mexico lodged its objections to the alternative methods of service, the

19    Ministry of Foreign Affairs of the Netherlands prepared a "courtesy translation" of

20    Mexico's declarations from the original Spanish text into English and French.

21    (Ruga Decl., ¶ 8, Ex. D, pp. 68-71 (Courtesy translations submitted by the Ministry

22    of Foreign Affairs of the Netherlands and maintained in the *United Nations Treaty*

23    *Series*) & Ruga Decl. at Ex. F, p. 86 (Campbell, p. 11). In 2003, the United

24    Nations published Mexico's original declarations (which are binding), along with

25    the courtesy English and French translations (which are not binding) of these

26    declarations in the *United Nations Treaty Series. Id.*

27       Unfortunately, as described below, the "courtesy" English translation of the

28    Mexican declarations is wrong. The unofficial English translation adds the

1   additional words "through diplomatic or consular agents," which do not appear in

2   the original Mexican declaration.  These additional words make it appear that

3   Mexico does *not* object to service by methods outside its central authority (e.g., by

4   mail or personal service), which is a mistake.

5        This is evidenced not only by the official and binding declaration filed by

6   Mexico, but also from the other "courtesy" translation of the same declaration into

7   French, which does not contain the additional words present in the English

8   translation.  The French translation makes clear that Mexico objected to all

9   methods of service other than through its central authority.

10        A side-by-side comparison of the original Mexican declaration related to

11   Article 10 with the English and French "courtesy" translations illustrates the point:

12

| SPANISH TEXT | ENGLISH TRANSLATION | FRENCH TRANSLATION |
|---|---|---|
| V. En relación con el artículo 10, los Estados Unidos Mexicanos no reconocen la facultad de remitir directamente los documentos judiciales [*] a las personas que se encuentren en su territorio conforme a los procedimientos previstos en los incisos a), b) y c); salvo que la Autoridad Judicial conceda, excepcionalmente, la simplificación de formalidades distintas a las nacionales, y que ello no resulte lesivo al orden público o a las garantías individuales. La petición deberá contener la descripción de las formalidades cuya aplicación se solicita para diligenciar la notificación o traslado del documento. | V. In relation to Article 10, the United Mexican States are opposed to the direct service of documents *through diplomatic or consular agents* to persons in Mexican territory according to the procedures described in sub-paragraphs a), b) and c), unless the Judicial Authority exceptionally grants the simplification different from the national regulations and provided that such a procedure does not contravene public law or violate individual guarantees. The request must contain the description of the formalities whose application is required to effect service of the document. | V. Se référant à l'article 10, les États Unis Mexicains ne reconnaissent pas la faculté d'adresser directement les actes judiciaires [*] aux personnes se trouvant sur leur territoire conformément aux procédures prévues aux paragraphes a), b), et c), sauf si autorité judiciaire accepte, de façon exceptionnelle, la simplification de formalités différentes des formalités nationales et que ceci ne contrevienne pas à l'ordre public ni aux garanties individuelles. La demande devra contenir la description des formalités dont l'application s'impose pour exécuter la signification ou la notification de l'acte. |

9

1    *Compare* Ruga Decl., Ex. D at p. 69 *with* Ruga Decl., Ex. D at p. 71 *and* Ruga

2    Decl., Ex. D at p. 72.

3        The unofficial English translation erroneously inserts the phrase "through

4    diplomatic or consular agents" that is not present in the official Spanish text. The

5    asterisks in the above comparison indicate where one would expect to find phrases

6    in Spanish ("por medio de sus agentes diplomáticos o consulares") and French

7    ("par les soins de leurs agents diplomatiques ou consulaires") corresponding to the

8    English highlighted text. As revealed by the chart, that language *does not appear*

9    *anywhere* in either the original Mexican declaration or the French translation of the

10   same. *Id.*[6]

11        Again, the correct translation is that Mexico is "opposed to the direct

12   service of documents to persons in Mexican territory according to the procedures

13   described in sub-paragraphs a), b) and c)", with paragraphs a), b) and c) referring

14   to service by mail and personal service. The erroneous interpretation states that

15   Mexico is "opposed to the direct service of documents ***through diplomatic or***

16   ***consular agents*** to persons in Mexican territory according to the procedures

17   described in sub-paragraphs a), b) and c)", inserting the phrase "***through***

18   ***diplomatic or consular agents***," which appears nowhere in the Mexican

19   declaration.

20        As explained below, this error has caused some courts and even the State

21   Department to be misled into believing that Mexico has not opted out of the "direct

22

23   _____

24   [6] The French translation of the Mexican Declarations related to Article 10 also was prepared by

25   the Ministry of Foreign Affairs of the Netherlands. The French translation correctly states that

     Mexico objects to all forms of alternative methods of service under Article 10. Accordingly, if

26   the erroneous English translation is not corrected, it will lead to an absurd result whereby

27   individuals in the United States are permitted to serve Mexican residents by personal service and

28   mail, but individuals in France cannot because the French translation is accurate.

1   service . . . according to the procedures described in sub-paragraphs a), b) and c)",
2   which is directly contrary to what the Mexican declaration states.

3        Not only does the foregoing comparison (between the actual Mexican
4   declaration, the French translation and the English translation) leave no room for
5   doubt that the "courtesy" English translation of Mexico's declaration related to
6   Article 10 is incorrect, but the following *certified* English translation of Mexico's
7   declaration related to Article 10 clarifies that Mexico *objected to **all forms** of*
8   *alternative service* under Articles 10(a)-(c), whether or not it is accomplished
9   through diplomatic or consular agents:

> In relation to ***Article 10***, the United Mexican States are ***opposed to the***
> ***direct service*** of documents to persons in Mexican territory according
> ***to the procedures described in sub-paragraphs a), b) and c)***, unless
> the Judicial Authority exceptionally grants the simplification different
> from the national regulations and provided that such a procedure does
> not contravene public law or violate individual guarantees. The
> request must contain the description of the formalities whose
> application is required to effect service of the document.

16   Ruga Decl. at Ex. H, p. 126 (certified translation of original Mexican declaration)
17   & Ruga Decl. at Ex. F, p. 92 (Campbell, p. 17) ("Mexico's objection is an across-
18   the-board objection to any use of the Article 10 alternative channels of service.").

19        **E.**     <u>**The Erroneous "Courtesy" English Translation Has Confused**</u>
20                 <u>**Even The State Department and Various State Courts Relying**</u>
21                 <u>**Upon the State Department Website, a Fate Which Should Not Be**</u>
22                 <u>**Repeated Here**</u>

23        The incorrect "courtesy" English translation has even caused confusion on
24   the State Department's website. On one hand, the State Department's Foreign
25   Affairs Manual (FAM), available on its website, correctly states that service of
26   process in Mexico by registered mail is prohibited because Mexico lodged
27   objections to Article 10(a) of the Convention. Ruga Decl., Ex. G at pp. 103-04 &
28   106-22 (7 FAM 951, available at http://www.state.gov/documents/organization/

1    86743.pdf (last visited March 10, 2009)).  The "International Judicial Assistance in

2    Mexico" section of the State Department website, however, inconsistently states

3    that service may be accomplished by international registered mail or by personal

4    service because "[t]here is no provision in Mexico law specifically prohibiting

5    service" in these ways.  Ruga Decl., ¶ 9 & Ex. E at pp. 73-75 (printout of

6    http://travel.state.gov/law/info/judicial/ judicial_677.html (last visited March 10,

7    2009)).  It should be emphasized that the Mexican declaration is the document that

8    controls, not the unofficial "courtesy" translations or any website.

9        Despite the fact that the State Department's website is not authority and

10    lacks the force of law, *Alyssa F. v. Christina R.*, 112 Cal. App. 4th 846, 855 n.10

11    (2003); *Casa de Cambio Delgado, Inc. v. Casa de Cambio Puebla, S.A. de C.V.*,

12    196 Misc. 2d 1, 7 (N.Y. Supr. Ct. 2003), several courts have cited it in support of

13    their conclusion that Mexico does not object to alternative methods of service

14    under Articles 10(a)-(c).[7] *See, e.g. Alyssa F.*, 112 Cal. App. 4th at 854 (citing State

15    Department website and concluding that "Mexico apparently does not prohibit

16    service on a person by registered mail."); *NSM Music, Inc. v. Alvarez*, 2003 WL

17    685338 at *2 (N.D. Ill., Feb. 25, 2003) ("Mexico does not appear to have a

18    prohibition on service by registered mail, at least according to a U.S. State

19    Department Web site.").

20        For example, in *Casa de Cambio Delgado*, the plaintiff served the

21    defendant—a Mexican corporation—in Mexico by personal service through a

22    Mexican attorney.  *Casa de Cambio Delgado*, 196 Misc. 2d at 3-4.  The defendant

23    subsequently filed a motion to dismiss on the grounds that service was not proper

24    under the Hague Convention.  *Id.* at 4.  The defendant argued that Mexico objected

25    to Articles 10(a)-(c) of the Convention and, therefore, service only could be

26

27

28    [7] None of these cases, however, acknowledged that the information provided by the State
       Department is internally inconsistent and therefore not reliable.

1 accomplished by transmitting the request to the Central Authority in Mexico.
2 *Id*. at 4.

3       The court in *Casa de Cambio Delgado* began its analysis by recognizing that
4 *service under the Hague Convention was mandatory* because the defendant was a
5 Mexican corporation that could not be served in the United States. *Id*. at 5. Next,
6 the court considered Article 10 of the Convention and observed that, because
7 "service by mail is not at issue in this case, the service at issue must be found to
8 comport with article 10(b) and (c)." *Id*. at 6. The court then considered whether
9 Mexico objected to Articles 10(b) and (c), but it looked *only at the mistaken*
10 *English translation* rather than at the original Spanish text. *Id*. at 6. Based on the
11 mistaken English translation, the court concluded that "the declaration by Mexico
12 regarding article 10 addresses only direct service of documents **through**
13 **diplomatic or consular agents** to persons in Mexican territory, *and is silent* as to
14 any other form of service under article 10(b) and (c) of the Hague Convention."
15 *Id*. at 7 (emphasis added). The court then cited the State Department's website to
16 confirm this interpretation of the Mexican declaration. *Id*. Not surprisingly, the
17 court denied the defendant's motion and explained: "Although Puebla argues that
18 service can only be effectuated under the Hague Convention through Mexico's
19 Central Authority, such an argument would render article 10 and Mexico's
20 declaration thereunder superfluous." *Id*. at 8.

21       Ironically, the *Casa de Cambio Delgado* court acknowledged that Mexico
22 could have objected to all forms of service under Article 10 of the Convention by
23 making "an outright objection as did other countries." *Id*. at 8 (*citing Wood v.*
24 *Wood*, 231 A.D.2d 713 (N.Y. Supr. Ct. 1996) (quashing personal service on a
25 German resident under the Hague Convention because "Germany filed an
26 objection to article 10 and declared that service under it shall not be effected.")).
27 Of course, as explained above, Mexico ***did*** make an outright objection to Article 10
28 but the objection has been mistakenly translated. *See* Ruga Decl., Ex. B at p. 26

13

1    (Mexico's official declarations) & Ruga Decl. at Ex. F, p. 92 (Campbell, p. 17)
2    ("Mexico's objection is an across-the-board objection to any use of the Article 10
3    alternative channels of service.").

4            Like *Casa de Cambio Delgado*, the court in *Alyssa F.* also was misled by the
5    State Department's website. In *Alyssa F.*, the San Diego County Health and
6    Human Services Agency (the "Agency") served the defendant with process in
7    Mexico via first class mail. *Alyssa F.*, 112 Cal. App. at 851. The defendant
8    challenged service and argued that it was improper under the Hague Convention.
9    *Id.* at 852. The court cited the State Department's website in support of its
10   observation that "Mexico apparently does not prohibit service on a person by
11   **registered mail**," *id.* at 854-55 & n.10 (emphasis added), but nevertheless
12   concluded that service by "**ordinary mail**" is insufficient. *Id.* at 855 (emphasis
13   added). The court thus quashed the Agency's service because it was accomplished
14   by ordinary, rather than registered, mail. *Id.* at 854-55.

15           Although the *Alyssa F.* court reached the correct result, it was misled by the
16   State Department's inconsistent website into believing that Mexico does not object
17   to service of process on its citizens by registered mail. The result in *Alyssa F.*
18   should not have been determined by the distinction between registered and
19   ordinary mail; neither is acceptable under a proper translation of Mexico's
20   declaration in relation to Article 10 of the Hague Convention. Ruga Decl. at Ex.
21   H, p. 126 & Ruga Decl. at Ex. F, p. 92 (Campbell, p. 17) ("Mexico's objection is
22   an across-the-board objection to any use of the Article 10 alternative channels of
23   service.").

24
25
26
27
28

**F.      The Proper Interpretation of Mexico's Declarations is an Open
          Issue in This Circuit; This Court is Not Bound and Should Not
          Repeat the Mistakes of Other State Courts**

Ninth Circuit has yet to consider Mexico's objection to Article 10 of the
Convention.  Thus, the proper interpretation of this document is an open issue for
this Court.

The Court should not repeat the mistakes of these other state courts.  The
Supreme Court has mandated that courts apply treaties **as written.**  *Sanchez-
Llamas v. Oregon*, 548 U.S. 331, 346 (2006).  Indeed, interpreting a treaty in a
manner that is inconsistent with the original text is "entirely inconsistent with the
judicial function."  *Id.* (*citing The Amiable Isabella*, 6 Wheat. 1, 71 (1821) ("To
alter, amend, or add to any treaty, by inserting any clause, whether small or great,
important or trivial, would be on our part an usurpation of power, and not an
exercise of judicial functions.  It would be to make, and not to construe a treaty.")).

Accordingly, this Court should enforce Mexico's declarations to the Hague
Convention as written, which clearly includes an objection to *all forms of
alternative methods of service* under Article 10, except through its Central
Authority.  (Ruga Decl., ¶ 7, Ex. C (certified copy of English translation of
Mexico's declaration related to Article 10)).  Provided with the governing
document – the actual Mexican declaration and certified translation thereto – the
Court should not turn a blind eye; rather, the Court should give full force and effect
to the Mexican declaration, as it is empowered to do and, in fact, charged to do
under the law.  *Todok v. Union State Bank of Harvard, Neb.*, 281 U.S. 449, 453
(1930) (rejecting an English translation and explaining that "[t]he text of the treaty
of 1783 with Sweden was in French only, and the French text is therefore
controlling."); *see also* Ruga Decl. at Ex. F, p. 87 (Campbell, p. 15 (quoting Jean
Hardy, *The Interpretation of Plurilingual Treaties by International Courts and
Tribunals*, 37 BRIT. Y.B. INT'L L. 72, 136 (1961) ("Whether prepared by the

15

1  contracting parties themselves, by an international body, or by a single contracting
2  or non-contracting State, official translations have in principle no value at the
3  international level and **in case of divergence between authentic or official texts**
4  **and official translations the former must automatically prevail**.") (internal
5  brackets omitted) (emphasis added)).

6  ## V.   CONCLUSION

7       There is no dispute that the Hague Convention must be complied with to
8  effect proper service on Televisa.  There is also no dispute that Mexico had the
9  right to object to any method of service other than through their Central Authority.

10       The only issue is whether Mexico did in fact file such an objection; if it did,
11  then the purported service upon Televisa is deficient because Plaintiffs admittedly
12  did not serve Televisa through Mexico's Central Authority.

13       The official Mexican declaration makes clear that Mexico objected to any
14  method of service other than through its Central Authority.

15       At a minimum, Plaintiffs, who bear the burden of proof to establish proper
16  service, cannot satisfy their burden; the letters of the Mexican declaration make it
17  clear (albeit in Spanish) that any method of service other than through Mexico's
18  Central Authority is prohibited.

19       Indeed, if the erroneous translation is not corrected, it will lead to an absurd
20  result whereby individuals in the United States are permitted to serve Mexican
21  residents by personal service and mail, but individuals in France cannot because
22  the French translation is accurate.

16

1         For these reasons, Televisa respectfully requests that the Court grant the

2    instant motion to dismiss.

3

4    Dated:  March 16, 2009                STEPTOE & JOHNSON LLP

5                                          Seong Kim

6                                          Dylan Ruga

7                                          By:_____/S/_____

8                                                  DYLAN RUGA

9                                        Attorneys for Specially-Appearing
                                         Defendant

10                                       Televisa, S.A. de C.V.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17